IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 7:25-CR-1143 |
| | ) | ANDERSON, SC |
| | ) | OCTOBER 30, 2025 |
| | ) | |
| VERSUS | ) | |
| | ) | |
| CHARLES WRIGHT, AMOS DURHAM, | ) | |
| LAWSON B. WATSON, | ) | |
| DEFENDANTS. | ) | |
| ______________________________ | ) | |

BEFORE THE HONORABLE TIMOTHY M. CAIN
UNITED STATES CHIEF DISTRICT COURT JUDGE
CHANGE OF PLEA HEARING

APPEARANCES:

FOR THE GOVERNMENT: LOTHROP MORRIS, AUSA
UNITED STATES ATTORNEY'S OFFICE
55 BEATTIE PLACE
SUITE 700
GREENVILLE, SC 29601

FOR THE DEFENDANT:
CHARLES WRIGHT: GREGORY HARRIS, ESQ.
HARRIS AND GASSER LAW FIRM
1529 LAUREL STREET
COLUMBIA, SC 29201

HAROLD WATSON GOWDY, ESQ.
TREY GOWDY LAW FIRM, LLC
P. O. BOX 3324
SPARTANBURG, SC 29304

AMOS DURHAM: FRANK L. EPPES, ESQ.
EPPES AND PLUMBLEE
P. O. BOX 10066
GREENVILLE, SC 29603

LAWSON B. WATSON: BEATTIE B. ASHMORE, ESQ.
BEATTIE B. ASHMORE LAW OFFICE
650 E. WASHINGTON STREET
GREENVILLE, SC 29601

APPEARANCES CONTINUED:

COURT REPORTER: DEBRA R. BULL, RPR, CRR
UNITED STATES COURT REPORTER
315 SOUTH MCDUFFIE STREET
ANDERSON, SC 29624

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

*** *** *** *** ***

(Whereupon, the hearing commenced at 10:12 a.m.)

THE COURT: I will be glad to hear from you.

MR. MORRIS: Thank you, Your Honor, this is the case of the United States versus Charles Wright, Amos Durham, and Lawson B. Watson, case number 7:25-CR-1143-Cain, and we are here for a change of plea.

THE COURT: All right.

Mr. Harris and Mr. Gowdy, is that your understanding that your client wants to plead guilty today?

MR. HARRIS: It is, Your Honor.

MR. GOWDY: It is, Your Honor.

THE COURT: Thank you.

Mr. Eppes, is that your understanding with respect to Mr. Durham?

MR. EPPES: Yes, sir, it is, Your Honor.

THE COURT: And Mr. Ashmore, is that your understanding with respect to Mr. Watson?

MR. ASHMORE: It is, Your Honor.

THE COURT: Okay. Well, I would ask that you all come forward and line up as the Deputy Clerk and Court Reporter request.

MR. EPPES: Your Honor, as I have asked, I am going to sit right here. I have explained that to Mr. Durham if that is okay with the Court.

THE COURT: Yes, sir.

MR. EPPES: Thank you, Your Honor.

THE COURT: Let me ask the attorneys if there is any objection to proceeding with these folks as a group? While it saves time for everyone when we do that, I have no problem with taking each Defendant individually as I have to be here all day anyway, but is there any objection to proceeding as a group?

MR. GOWDY: No, sir, Your Honor.

MR. HARRIS: No, sir.

MR. EPPES: No, sir, Your Honor.

MR. ASHMORE: No, sir, Your Honor.

THE COURT: Okay. Let me ask the attorneys, again, starting with Mr. Gowdy, have you had a sufficient amount of time to confer with your client to discuss these matters?

MR. GOWDY: Yes, sir, Your Honor.

MR. HARRIS: I have, Your Honor.

MR. EPPES: I have, Your Honor.

MR. ASHMORE: Yes, Your Honor.

THE COURT: Again to the attorneys, have you advised your client of his Constitutional rights and explained the court process.

MR. GOWDY: Yes, sir, Your Honor.

MR. HARRIS: I have.

MR. EPPES: Yes.

MR. ASHMORE: I have.

THE COURT: Do you feel your client understands what he is doing today?

MR. GOWDY: Yes, sir, Your Honor.

MR. HARRIS: He does, Your Honor.

MR. EPPES: Without a doubt.

MR. ASHMORE: He does, Your Honor.

THE COURT: Gentlemen, would you please raise your right hand and be sworn by the Deputy Clerk?

CHARLES WRIGHT, AMOS DURHAM, LAWSON B. WATSON, having been first duly sworn, testified as follows:

THE COURT: Let the record reflect that all Defendants have been sworn.

(**The Defendants answered in the following order: CHARLES WRIGHT; AMOS DURHAM; LAWSON B. WATSON.)**

EXAM

BY THE COURT:

Q. Gentlemen, I am going to be asking you some questions about your decision to plead guilty, and when you answer, I need for you to continue to speak up so that we can hear you and so the Court Reporter can make a record of what is said. I will start with Mr. Wright and then move on to Mr. Durham and then finally to Mr. Watson. So, I would ask that you answer these

questions individually, one at a time, so that we don't have more than one person trying to speak at the same time. When that happens it is difficult to make a proper record.

Please make sure that your neighbor has completed his answer before you start with your answer in that regard.

Now, the Assistant United States Attorney and your attorney tell me that you want to plead guilty today and, Mr. Wright, as I understand it, you are pleading guilty -- you are all pleading guilty to an Information: Mr. Wright, you are pleading guilty to Count One, Count Two and Count Three of the Information; is that correct, sir?

A. Yes, Your Honor.

Q. And, Mr. Durham, I understand that you are plea ding guilty to Count One of the Information; is that correct?

A. Yes, sir, Your Honor.

Q. And, Mr. Watson, I understand that you are pleading guilty to Count Two of the Information; is that correct?

A. Yes, sir.

Q. Can everybody hear me?

A. Yes, sir.

A. Yes, sir.
A. Yes, sir.
Q. Before I can accept your plea of guilty, it is necessary for me to make sure that you are pleading guilty freely, voluntarily and knowingly. By pleading guilty, you are giving up certain important rights and possible legal defenses you may have under the law. I need to ask you some questions and it is very important that you listen carefully to my questions and to everything else that is said during this hearing. If I give you information which is different from what others, including your lawyers, have told you, you must rely upon what I say. If I ask a question that you do not understand or use a word or phrase that you do not understand, you should tell me so that I can explain these to you; otherwise, I will presume that you understand these questions and everything that is said today.

During this questioning, if you feel it is necessary, you may ask for an opportunity to speak with your lawyer privately and I will allow you to do so. Do you understand all of that?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.

Q. Do you understand that you are now under oath and what you tell me is material to your case, such that if you answer any of my questions falsely, your answers may later be used against you in another proceeding to include a criminal prosecution for perjury or for making a false statement?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Please state your full name.
A. Charles Lawson Wright, Jr.
A. Amos Leonard Durham.
A. Lawson Barry Watson, Jr.
Q. What is your middle name?
A. Berry, B-e-r-r-y.
Q. Thank you.
How old are you?
A. I am sixty years old, sir.
A. Sixty-one.
A. Seventy-three.
Q. And how far did you go in school; in other words, what is your highest educational level?
A. Two year degree.
A. Bachelor of Science.
A. Twelfth grade, graduated.

Q. So, can you read, write, speak, and understand the English language?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Where were you born?
A. Spartanburg.
A. Woodruff.
A. Spartanburg.
Q. These next few questions are questions that I ask of every defendant, so please do not be offended by my asking you. Have you used any alcohol or drug within the last 24 hours?
A. No, sir.
A. No, sir.
A. No, sir.
Q. Are you under the influence of any alcohol, drug, medication, or any other substance or mental or physical condition which would keep you from understanding what you are doing today?
A. No, sir.
A. No, sir.
A. No, sir.
Q. I did not believe that any of you were.
Are there any medications that have been

prescribed for you by a doctor or medical provider that you are supposed to be taking that you have not taken today?
A. No, sir.
A. No, sir.
A. No, sir.
Q. Have you ever been treated for mental illness or addiction to alcohol or drugs?
A. Yes.
A. Yes, sir.
Q. Tell me about that, Mr. Wright. When were you treated and for what problem?
A. In April of this year, I was treated for an opioid addiction.
Q. Was that inpatient?
A. Yes, sir.
Q. And what facility or who was the provider?
A. It was Futures in Florida.
Q. Did you successfully complete that treatment?
A. Yes, sir.
Q. Now, in reviewing the file, I understand that Judge Brown ordered you to continue with treatment, was that treatment that you were already in?
A. Yes, sir.
Q. And who is that with?

A. Celebrate Recovery and a mental health professional every Wednesday.
Q. Other -- well, let me move on. Again, have you had any other treatment that you need to tell me about?
A. No, sir.
Q. The question is, have you ever been treated for mental illness or addiction to alcohol or drugs?
A. No, sir.
A. No, sir.
Q. Other than Mr. Wright, other than what you just shared with me, have you recently been treated by a doctor, psychiatrist, psychologist, or mental health professional?
A. Yes, sir, on September 2nd I had a heart attack.
Q. September 2nd of this year?
A. Yes, sir.
Q. And tell me how you are doing with that.
A. Each day a little better. Doing my physical rehab like the doctor ordered and taking my medicine.
Q. Again, the question is, have you recently been treated by a doctor, psychiatrist, psychologist, or mental health professional?
A. I am seeing a therapist now.
Q. For counseling?
A. Counseling.

Q. Are you receiving any medication for that?
A. No, sir.
Q. All right.
A. I'm sorry, no, sir. No, sir.
Q. You are not seeing anybody, haven't seen anybody lately?
A. No, sir.
Q. Do you understand what is happening today?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Are you satisfied with the services of your attorneys?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Have you had enough time to meet with your lawyers and discuss your case?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Have your attorneys advised you of your rights and explained the court process to you?
A. Yes, sir.
A. Yes, sir.

A. Yes, sir.
Q. Have your attorneys explained the possible consequences that may take place as a result of this proceeding?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Have you told your attorneys everything that you want to tell them?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. And have your attorneys done everything that you have asked them to do for you?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Is there anything that you would like for your lawyers to do for you at this time before we proceed any further with your case?
A. No, sir.
A. No, sir.
A. No, sir.
Q. Do you authorize and request your attorneys to speak on your behalf today?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
THE COURT: Let me turn to the attorneys again beginning with Mr. Gowdy: Taking into consideration everything that you know about your client and your client's case, do you agree with the client's decision to plead guilty?
MR. GOWDY: Yes, sir, Your Honor.
MR. HARRIS: I do, Your Honor.
MR. EPPES: I do, Your Honor.
MR. ASHMORE: Yes, sir, Your Honor.
THE COURT: Again, to the attorneys, do you have any concerns about your client's competency to make this decision?
MR. GOWDY: No, sir, Your Honor.
MR. HARRIS: No, sir.
MR. EPPES: Absolutely not, Your Honor.
MR. ASHMORE: None whatsoever.
THE COURT: Any concerns about competency from the Government.
MR. MORRIS: No, Your Honor.
THE COURT: I find that each Defendant is competent to plead guilty and I make this finding for the record.

EXAM CONTINUED

BY THE COURT:

Q. Gentlemen, as I indicated earlier, by pleading guilty, you are giving up certain important rights and possible legal defenses you may have under the law. Do you understand that under the Constitution and law of the United States, you have a right to plead not guilty, and if you plead not guilty, you are entitled to a public and speedy trial by a jury on the charges contained in the Information?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. It matters not to me whether you plead guilty or not. If you decided to plead not guilty and request a trial by jury, you would also be entitled to a number of procedural rights as a Defendant in a criminal case. I want to list these rights for you so that you will have a clear understanding of what you will give up if you plead guilty.

If a trial was held, you would have the right to the assistance of counsel for your defense at every stage of your case, including the trial. If you could not afford an attorney, one would be appointed for you without cost to you and, of course, you are all

currently being represented by very competent and experienced attorneys at this time.

There is no burden of proof upon you whosoever. You are presumed innocent of any charge brought against you by the Government unless the Government proves you guilty of each and every element of such offense beyond a reasonable doubt. You would be presumed innocent and the Government would be required to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty and you would not have to prove that you were innocent if a trial was held.

If a trial was held, the witnesses for the Government would have to come to court and testify in your presence. They would do so from the witness box to my right. Your attorney could cross-examine the Government's witnesses and ask them questions. Your attorney could also object to evidence offered by the Government. And although there is no burden of proof upon you, your attorney could offer evidence on your behalf.

While there is no burden of proof upon you, if a trial was held, you would have the right to testify, if you chose to do so; however, you also would have the right not to testify, and if you decided not to testify, I would inform and instruct the jury that no inference

or suggestion of guilt could be drawn from the fact that you did not testify.

If a trial was held, you would have the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense and to compel the production of other evidence. In other words, while there is no burden of proof upon you, if a trial was held and you had witnesses that you wanted to come to court to testify, the Court would assist you and your attorney in having those witnesses brought to court, if necessary.

If a trial was held, in order for you to be found guilty, the jury would have to reach a unanimous verdict by all of the jury members. Do you understand all of these important rights I have outlined for you?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. If you plead guilty, and I accept your plea, you will give up your right to a jury trial and the other rights I have just listed for you and there will be no trial and I will enter a judgment of guilt and sentence you on the basis of your guilty plea.

Also, if you plead guilty, you will have to give up your right not to incriminate yourself since I

will ask you questions about what you did in order to satisfy myself that you are guilty as charged and you will have to acknowledge and admit to your guilt; do you understand?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. If you plead guilty, and I accept your plea, you may be required to make restitution to the victim or victims of your acts either by payment of money or in personal services as may be directed by the court. If restitution is ordered, failure to comply may be the basis for revoking any period of supervised release that may be imposed as a part of your sentence; do you understand?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. The offenses to which you are pleading guilty are felony offenses. If your plea is accepted, you may be deprived of valuable Civil Rights, such as the right to vote, hold public office, serve on a jury, and possess any kind of firearm. It may also affect your ability to receive certain Government benefits; do you understand?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Your Information contains a forfeiture provision whereby the Government seeks title, use and possession of certain monies, property, or substitute assets which you may have derived from criminal activity. Have you been over that part of the case with your attorney and do you understand it?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. If you plead guilty, the Court is obligated to impose a mandatory Special Assessment fee for each count of the information that you admit to that is payable immediately upon sentencing; do you understand?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. If you plead guilty today and at some point in the future you plead guilty or no contest to or you are convicted of a criminal case in a state or federal court, this plea today may be used to give you an enhanced or greater sentence in that case; do you understand?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Have you had a full and complete opportunity to review the information which contains the charge or charges that you are admitting to today with your attorneys, as well as your case in general?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Now, you are being charged by way of an Information and I want to talk to you about that for just a few minutes. Have you received a copy of the Information? That is, the document that contains the charges against you in this case?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. And have you reviewed that in detail and discussed it with your attorney?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Has your attorney or have your attorneys explained those charges to you?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. You have a Constitutional right to require that this matter proceed only upon an Indictment by a Grand Jury of this District. You can waive or give up that right. If you do give up that right, this matter will proceed against you without any consideration of the matter of Grand Jury. It will proceed solely on the information; do you understand?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. If you do not give up that right, the matter will not proceed to disposition unless a Grand Jury of this District finds by returning an indictment that there is probable cause to believe that you committed the offense or offenses. A Grand Jury is composed of at least 16, but not more than 23 people selected at random from voters of this District. At least 12 Grand Jurors must find probable cause to believe that the offense or offenses charged in the proposed information were committed by you before you can be indicted. A Grand Jury might or might not indict you on these charges; do you understand?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Have you discussed your waiver of Indictment with your attorneys and received their advice?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Has anyone forced you, or threatened you, or pressured you in any way to get you to waive Indictment by a Grand Jury?

A. No, sir.

A. No, sir.

A. No, sir.

THE COURT: And I believe each Defendant has signed a waiver and that has been filed and made a part of the record.

I find each defendant has freely, and voluntarily, and knowingly waived his right to Indictment by a Grand Jury of this District. The Defendants -- each Defendant's waiver of indictment is, therefore, accepted.

EXAM CONTINUED

BY THE COURT:

Q. At this time I would like for us to go over the

charge or charges that each Defendant is admitting to today, as well as the elements of those charges the Government would be required to prove beyond a reasonable doubt and also the penalties associated with each offense. If there is no objection, I will turn to the Assistant U. S. Attorney to go over this for the record and, gentlemen, I ask that you listen very carefully as this information is presented.

MR. MORRIS: Thank you, Your Honor. Count One is conspiracy to commit theft concerning programs receiving federal funds. The elements are as follows: Two or more people agree to commit a theft with respect to Government funds under 66(a)(1)(A) (sic). Wright and Durham knew of the conspiracy and willfully joined in the conspiracy, and one or more of the members of the conspiracy knowingly performed, in the District of South Carolina, at least one overt act charged in the Information.

With respect to the elements of 666(a)(1)(A), the Defendants had to be agents of a state, local government, they had to have received -- the government had to have received one year period of benefit in excess of 10,000 dollars in a federal program; and, second, the Defendants embezzled or stole property valued at 5,000 dollars or more that were under the

care, custody, and control of said agency. That is Count One.

Count Two of the elements are two or more people agree to execute a scheme or artifice to defraud by using interstate wires. Wright and Watson knowingly and willfully joined in the agreement or conspiracy with intent to defraud. That is Count Two.

Count Three is obtaining controlled substance by misrepresentation. The elements for Count Three are: Wright obtained possession of controlled substances, he did so by misrepresentation, fraud, deception, and he did so knowingly and intentionally. That is Count Three.

THE COURT: All right. Do you want to go over the penalties?

MR. MORRIS: The penalties for Count One are five in prison, 250,000 dollar fine, supervised release of five years, with a Special Assessment of 100 dollars.

Count Two, the penalty is 20 years in prison, 250,000 dollars, supervised release of up to five years, and a 100 dollar Special Assessment.

Count Three, the penalty is four years in prison, 250,000 dollar fine, and three years supervised release, as well as a 100 dollar Special Assessment.

THE COURT: Thank you. I concur with and adopt

the statement of the Government as to those matters.

You referenced as to Count One, 18 USC 666(a)(1)(A), (B) and 2, but the statute listed on Count One is 18 USC 371?

MR. MORRIS: Yes, it is a 371 conspiracy to violate 666.

THE COURT: Thank you.

EXAM CONTINUED

BY THE COURT:

Q. All right. Gentlemen, did you listen carefully to and did you understand everything the Prosecutor said about the charge or charges you are admitting to today, as well as the essential elements of those charges the Government would be required to prove beyond a reasonable doubt, and also the penalties associated with your offense or offenses?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you still want to plead guilty?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you need any more time to speak with your lawyers before we proceed?

A. No, sir.
A. No, sir.
A. No, sir.
THE COURT: Well, with respect to each Defendant, I find that each Defendant fully comprehends and understands the nature of the charge or charges against him and generally what elements the Government would have to prove beyond a reasonable doubt should a trial be held and also the penalties associated with each offense.

EXAM CONTINUED

BY THE COURT:
Q. Gentlemen, if you plead guilty or if you are convicted by a jury, then I will have to determine the appropriate sentence to be imposed. In determining the appropriate sentence, I am required to consider the statutory sentencing factors set out in Section 3553(a) of Title 18 of the United States Code and also the Advisory Sentencing Guidelines issued by the United States Sentencing Guidelines Commission. The guidelines are used as a starting point in determining a sentence. The Court is required to calculate the applicable guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other factors under 18 USC Section 3553(a).

The Court will also consider the purposes of sentencing, which include punishment, deterrence, incapacitation, and rehabilitation in making its determination; do you understand?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Have you and your attorneys talked about how the statutory factors and the advisory guidelines may affect your sentence?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you understand that the Court will not be able to determine the advisory guideline range for your case until after the Presentence Report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the Probation Officer who prepares the Report?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you understand that the guidelines are advisory, and that after it has been determined what

guidelines apply to your case, the Court has the authority to impose a sentence more severe or less severe than the sentence called for by the guidelines?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. In calculating the range of sentence under the Advisory Sentencing Guidelines and determining an appropriate sentence, the Court will take into account all conduct, circumstances, and injuries associated with your criminal conduct whether or not this conduct is formally charged by the Government. The Court will consider all relevant conduct at the time of sentencing. Additionally, there is no limitation placed on the information the Court can consider at the time of sentencing concerning your background, character, and conduct so long as the information is reliable. The Court will take all of these factors into consideration in determining an appropriate sentence; do you understand all of that?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you understand that any sentence that may be imposed may be different from and possibly greater than

any estimate your attorneys or anyone else may have given you?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. If you plead guilty, and I accept your plea, the law provides that upon your release from incarceration that you be subject to a term of supervised release. If placed on supervised release, you will be under a Court Order that prescribes rules for your behavior. If you violate any term or condition of supervised release, you can be required to serve an additional period of incarceration above the statutory maximum allowed for the underlying offense; do you understand?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Do you understand that parole has been abolished in the federal system and if you are sentenced to prison you will not be released early on parole?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Has anyone forced you, or threatened you, or pressured you in any way to get to you plead guilty?

A. No, sir.
A. No, sir.
A. No, sir.
Q. Are you pleading guilty of your own free will because you are guilty?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Now, I understand that each of you has entered into a Plea Agreement with the Government. Mr. Wright, your Plea Agreement has been filed at ECF number 4 and it is ten pages long, I am holding up the signature page that indicates you signed it, your attorney signed it, counsel for the Government signed it, is that your signature?
A. Yes, sir.
Q. Mr. Durham, your Plea Agreement is dated September 25th of this year and it is nine pages long and it has your signature, the signature of your attorney and the attorney for the Government; is that your signature?
A. Yes, sir.
Q. Mr. Watson, your Plea Agreement is eight pages long and it has your signature and your attorney's signature and the attorney for the Government, and it

is dated -- looks like you signed it on the 24th and the Government signed it on the 24th, is that your signature?

A. If you say it is it is.

Q. No, sir, it is whether you say it is.

A. Yes, sir.

Q. I see Mr. Ashmore showed it to you.

A. Yes, sir.

A. I can't see it, Judge, I am sorry.

Q. Well, you are standing there next to your lawyer and he showed it to you, can you see it and read it?

A. Yes, sir.

Q. And is that your signature on the Plea Agreement?

A. Yes, sir.

THE COURT: Do you agree with that, Mr. Ashmore?

MR. ASHMORE: For the record, I am showing him an identical copy of what you are holding up for him to see, Your Honor, and this is my signature and his signature and the signature of the Assistant U. S. Attorney.

EXAM CONTINUED

BY THE COURT:

Q. All right. Gentlemen, did you enter into your Plea Agreement freely and voluntarily of your own free will?

A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Did anyone force you, or threaten you, or pressure you in any way to get you to sign that Agreement?
A. No, sir.
A. No, sir.
A. No, sir.
Q. Did you have a full and complete opportunity to review the Agreement and discuss it with your attorney before you signed it?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. And did your attorneys explain the Agreement to you to your satisfaction?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Do you understand everything in the Agreement?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. And do you want me to accept your Plea Agreement?
A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. At the time you signed the Plea Agreement, were you under the influence of any alcohol, drugs, or other conditions that would have affected your judgment or any type of stress or duress?

A. No, sir.

A. No, sir.

A. No, sir.

THE COURT: Okay. Well, I would like for us to go over the Plea Agreements for the record and I am happy to summarize those agreements for the record or if counsel for the Government wants to do it we can all follow along.

MR. MORRIS: That is fine, we can do it.

THE COURT: Gentlemen, please listen carefully as the Prosecutor summarizes the terms of your Plea Agreement.

MR. MORRIS: Your Honor, paragraph four of Defendant Wright's Plea Agreement and paragraph two of Defendant Durham and Watson's Plea Agreement, they agree that they understand the monetary penalties, fines and restitution.

Paragraph five of Defendant Wright's Plea Agreement and paragraph three of Defendant Durham and

Watson's Plea Agreement, they agree that they understand the inmate financial repayment program relating to fines, restitution, Special Assessment.

Paragraph six of Defendant Wright's Plea Agreement and paragraph four of Durham and Watson's Plea Agreement, they understand that they must abide by federal law. The Government agrees not to charge Mr. Wright with a 922(g)(3) gun charge. And all of the Defendants understand that if they fail to abide by the terms of the Plea Agreement, the Plea Agreement will be null and void.

Paragraph seven of Wright's Plea Agreement and paragraph five of Durham's and Watson's Plea Agreement includes forfeiture provisions. They agree not to contest forfeiture and agree to forfeiture provisions.

Paragraph eight of Wright's Plea Agreement and paragraph six of Durham and Watson's Plea Agreement, Your Honor, you covered most of this, but I am going to go ahead and just repeat it. They agree that they have waived -- they have waived certain rights, they have met with their attorneys enough times to discuss the case. They are satisfied that they understand their rights to a trial. They have waived the benefits of a trial versus a plea. And they have entered the Agreement voluntarily.

Paragraph nine of Wright's Plea Agreement, paragraph seven of Durham and Watson's Plea Agreement, they waive their right to appeal. They waive their right to file 2255 motions except for ineffective assistance of counsel, prosecutorial misconduct, future changes in the law.

And then finally in paragraph ten of Wright's Plea Agreement and paragraph eight of Durham and Watson's Plea Agreement, they waive their right to FOIA requests.

And then the final paragraph of all agreements states this is the entire agreement.

THE COURT: Thank you.

EXAM CONTINUED

BY THE COURT:

Q. Gentlemen, let me ask you, did you listen carefully to and did you understand the summary of your Plea Agreement provided by the Assistant U. S. Attorney?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Was your Agreement summarized correctly?

A. Yes, sir.

A. Yes, sir.

A. Yes, sir.

Q. Each of you in your Plea Agreement have agreed to waive certain appellate rights, which are very important rights. By mentioning this one provision in each Plea Agreement I do not intend to minimize the importance of the others, but each of you have agreed that in exchange for the concessions made by the Government in your Plea Agreement, you have agreed to waive the right to contest your conviction or sentence in any direct appeal or other post-conviction action, including any proceedings under 28 USC 2255 with that waiver not being applicable to claims of ineffective assistance of counsel, prosecutorial misconduct, or future changes in the law that affect your sentence. Have you been over that provision in your Plea Agreement specifically with your attorneys and do you understand it?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Other than the representations made by the Government and the four corners of your written Plea Agreement, has anyone promised you anything to get you to plead guilty?
A. No, sir.
A. No, sir.
A. No, sir.

Q. Has anyone made any prediction, prophecy, or promise to you as to what your sentence will be?
A. No, sir.
A. No, sir.
A. No, sir.
THE COURT: All right, well, at this time I will be glad to hear from the Government with respect to a summary of the evidence the Government would be prepared to present and a summary of the facts the Government will be prepared to prove should a trial be held so as to establish an independent factual basis for each offense for each Defendant. Gentlemen, once again, I will ask that you listen carefully as this information is presented and I will ask you some questions about it when the Assistant U. S. Attorney is finished.
MR. MORRIS: Thank you, Your Honor.
If this case had proceeded to trial, the United States would prove beyond a reasonable doubt the following: As to Count One, the Chaplain's Benevolent Fund is operated by the Sheriff's Office in association with the Spartanburg County Foundation. The Sheriff's Office in Spartanburg County both receive in excess of $10,000 in federal funding annually and Wright and Durham misapplied at least $5,000 under the care of the

Sheriff's office in violation of federal law. The fund is established to support deputies in their time of need: Physical, financial, and emotional.

Amos Durham and Charles Wright willfully joined in the conspiracy to personally use public funds for their private use. This was an abuse of their positions.

In December of 2022 to October of 2024, the Benevolence Fund account made cash withdrawals of $89,000. The fund is not supposed to make cash withdrawals because they can't verify it. Both Wright and Durham took cash from the fund for their personal use. In one instance relating to the fund, there was a $1,000 check to an individual who sold narcotics to Wright. The check is from Spartanburg County Chaplain's Benevolent Fund and was signed by Amos Durham. Chuck Wright wrote the name of the individual on the check and gave it to the individual during the time he was buying large amounts of narcotics.

In May of 2023, Wright asked Durham for $4,000 for travel expenses for the Police Week to honor a fallen deputy. Wright said the money was to cover travel expenses. Instead, Wright used the County credit card to charge hotel fees, Uber fees, and food related to purchases in Washington. The Spartanburg

County Sheriff's Office paid for his credit card bill, as well as all of the accommodations for the people who were at the -- Washington, and it included Wright's stay during the Police Week. Wright used the $4,000 for his personal use.

Count Two is the no-show employee, that is L. B. Watson is Wright's wife's cousin. From 2021 to 2025, Watson did not work a full-time job, but was paid via wire transfer a full-time salary plus use of a County vehicle, cellphone, and fuel. During work hours, Watson worked at his business L. B. Watson Grading. From January '21 through February '25 -- 2025, Watson and Wright knowingly and willfully joined in an agreement that Watson would not be required to work a full-time job. Wright allowed Watson to continually receive a paycheck and benefits for work he did not perform.

Watson was paid approximately $200,000 for work he did not perform.

Count Three, obtaining drugs by misrepresentation. In 2023, Wright met a friend and told him that he had a large amount of pain pills. Wright told him he would take the medication and dispose of them as part of the Take Back Narcotics Program which was a misrepresentation. His friend gave Wright 147

oxycodone pills, which is a controlled substance, and Wright used the pills for himself.

Wright had a pattern of telling employees from the Sheriff's office, as well as family members of employees with illnesses or at funerals that he attended that he would dispose of leftover pills as part of the Take Back Program, but he would use those pills for himself.

This statement of facts incorporates parts of the facts set forth in the Information, as well as the charges, and this Court has venue over this case.

THE COURT: Thank you.

EXAM CONTINUED

BY THE COURT:

Q. Gentlemen, let me ask each of you, did you listen carefully to the Prosecutor's summary of the facts of the case and what you did?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
Q. Do you agree with the Prosecutor's summary of the facts of the case and what you did?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.

Q. Do you disagree with anything the Prosecutor said about what you did?
A. No, sir.
A. No, sir.
A. No, sir.
Q. I inform you all that a guilty plea is a grave and solemn act which should be entered into with great care after receiving the close assistance of counsel. Having been informed of your rights and upon consideration of all of the information presented, do you still wish to plead guilty today?
A. Yes, sir.
A. Yes, sir.
A. Yes, sir.
THE COURT: Is there anything else from the Government with respect to this plea hearing today?
MR. MORRIS: No, Your Honor.
THE COURT: Is there anything else on behalf of Defendant Wright today?
MR. GOWDY: No, sir, Your Honor.
MR. HARRIS: No, sir.
THE COURT: Is there anything else on behalf of Mr. Durham today?
MR. EPPES: No, sir, Your Honor.
THE COURT: Is there anything else on behalf of

Mr. Watson today?

MR. ASHMORE: No, sir, Your Honor.

THE COURT: Based upon the information presented, I find there is a factual basis for each Defendant's guilty plea. I further find that each Defendant's plea of guilty is made freely, voluntarily, and knowingly with the advice and assistance of counsel and is supported by an independent basis in fact containing each of the essential elements of each offense. Each Defendant's plea of guilty is, therefore, accepted, and each Defendant is hereby adjudged guilty of the offense or offenses charged and admitted to today.

I will provisionally accept the Plea Agreement for each Defendant pending receipt of the Presentence Investigation Report. I will ask that the U. S. Probation Office commence investigations as to each Defendant and I ask that office to prepare a Presentence Report for each defendant.

Gentlemen, when that report is completed, you will have the opportunity to come back to Court and tell me anything you want me to know about your life, your situation, and your case, and you will have as much time as you need to do that.

So, the next inquiry I would make would be on the matter of bond. I understand bond was recently set,

I assume each Defendant wants to remain on bond, but I will let the lawyers speak to that.

MR. GOWDY: Yes, sir, Your Honor.

MR. HARRIS: Absolutely, Your Honor. We have a plan to meet with Probation, frankly, this afternoon. We respectfully request you accept the recommendation that was made this past Monday by the Magistrate Judge.

MR. EPPES: Yes, Your Honor.

MR. ASHMORE: Ask to remain on bond, Your Honor.

THE COURT: How have they done so far?

PROBATION OFFICER: As of today, they are in compliance with their bond conditions.

THE COURT: What is the position of the Government?

MR. MORRIS: We agree to having them remain out on bond. We don't believe they are a risk of flight or a danger to the community.

THE COURT: Thank you. All right. I will grant that request with respect to each defendant.

EXAM CONTINUED

BY THE COURT:

Q. Gentlemen, you remain subject to the terms, conditions, and provisions of the Bond Order entered by Judge Brown earlier this week; do you understand?

A. Yes, sir, I do.

A. Yes, sir.
A. Yes, sir.

THE COURT: All right. If there is nothing else, thank you very much and good luck to you.

MR. GOWDY: Thank you, Your Honor.

MR. HARRIS: Thank you, Your Honor.

MR. ASHMORE: Thank you, Your Honor.

MR. EPPES: Thank you, Your Honor.

(Whereupon, the hearing concluded at 10:59 a.m.)

*** END OF REQUESTED TRANSCRIPT ***

* * * * * * * * * * * * * * * * * * * * * * * * * * *

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from my stenographic notes in the above-entitled matter.

S/Debra R. Bull, RPR, CRR May 8, 2026
Date