IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case Number:  7:25-1143-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES WRIGHT, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

## DEFENDANT CHARLES WRIGHT'S SENTENCING MEMORANDUM

### I. Introduction

Mr. Charles Wright appears before this Court having taken as much personal and professional responsibility as a person can take.  Mr. Wright sought medical treatment for addiction to prescription medications even before any charging instrument was filed or even discussed.

Shortly after he completed an inpatient treatment program, Mr. Wright's counsel began initial conversations with law enforcement. These discussions resulted in Mr. Wright taking one of the most challenging and difficult steps an elected official can take: he resigned an office he held for decades and accepted accountability for his actions which fell below his own standards and the law.

Additionally, Mr. Wright, months before any charging instrument was filed, voluntarily surrendered all firearms and ammunition and worked with law enforcement to clean out his office at the Sheriff's Department; even to the extent of leaving office at the time directed by law enforcement and under their supervision.

1

Later, he pleaded guilty to an Information which made him a convicted felon for the remainder of his life. He has remained in a recovery program for addiction and while he understands he will be an addict for the rest of his life, he also has remained subject to drug testing and sober since coming home from the inpatient treatment.

Mr. Wright, using the amount cited in the government's charging instrument, made partial restitution to the Spartanburg County Foundation.

In sum, Mr. Wright has not only done everything asked of him, but he has also taken immediate and affirmative steps to accept responsibility and express his genuine and profound remorse without qualification or excuse.

The question now before the Court is what additional consequence or punishment is warranted above and beyond the actions taken by Mr. Wright to remediate his conduct. The objective of our criminal justice system is multifold to include but not limited to punishment, rehabilitation, restitution, separation from society, concomitant with the stigmas and consequences which will follow a defendant for life. It is important that a sentence be "sufficient, but not greater than necessary" to achieve the purposes of sentencing under 18 U.S.C. § 3553(a). For the reasons set forth below, a sentence emphasizing treatment, supervision, and accountability—rather than a lengthy period of custodial incarceration—best serves these statutory and societal goals.

**II. History and Characteristics of the Defendant - 18 U.S.C. § 3553(a)(1)**

Charles Wright devoted his entire adult life to law enforcement in the state of South Carolina and in Spartanburg County. Serving in law enforcement was not merely a career choice; it was his identity and calling. As he often explained, it was "all I ever wanted to do" and "all I have ever known." Rising from uniform patrol deputy to Sheriff of Spartanburg County represented the culmination of decades of service to the public. Candidly, few, if any people gave

him much of a chance when he announced his intention to run for Sheriff. But perseverance and hard work was ultimately rewarded by the people of Spartanburg County.

Mr. Wright's life story is, and has been, one of resilience and overcoming seemingly insurmountable obstacles, which then led to the need for self-determination. He left an abusive home at age sixteen. He had grown tired of the physical abuse and being asked about the marks and bruises on his body left by an abusive parent. Having nowhere else to turn, Mr. Wright lived in a fire department, never finished high school, and yet somehow later earned the trust of a county to serve as its chief law-enforcement officer. That trust was not bestowed lightly, and his decades-long career prior to these offenses was otherwise exemplary. In what can only be described as a tragic fall, Mr. Wright went from the most popular elected official in Spartanburg County to where he is today, standing before your Honor embarrassed, forever out of the profession he loved, and forever tainted with the stigma of felony status.

The offense conduct in this case stands in stark contrast to his history and character before the scourge of addiction wreaked its havoc. His crimes were not predatory, violent, or profit-driven. Rather, it was aberrant conduct driven by addiction to pain medication—an illness Mr. Wright did not previously confront and did not adequately treat until after his arrest. Importantly, he is a first-time offender whose criminal conduct is wholly inconsistent with the life he led before addiction took hold.

## III. Extraordinary Post-Offense Rehabilitation

Since being confronted by the Government, Mr. Wright has done precisely what this Court and the criminal justice system hope defendants will do when accused of wrongdoing. He entered and completed a clinically supervised substance-abuse treatment program, submitted to regular drug testing, engaged in counseling and relapse-prevention programming, and has demonstrated

3

more than sixteen months of sustained sobriety.  He has a supportive wife and family who have helped him navigate the difficult path to acceptance and recovery.

Mr. Wright's post-offense rehabilitation is extraordinary, not simply because he entered treatment, but because it reflects a profound reckoning with a substance-use disorder that arose directly from the demands and sacrifices of his law-enforcement career. His descent into addiction did not begin in secrecy or indulgence; it began with pain management necessitated by the physical toll of decades spent in uniform. Multiple surgeries—each a consequence of the wear and tear inherent in law enforcement—introduced Mr. Wright to prescribed opioid medication, setting the stage for dependency long before any criminal conduct occurred.

Even more significant than the physical pain, but admittedly harder for the public to see, was the psychological burden Mr. Wright carried throughout his career, particularly as the trauma accumulated. Some of what befell Mr. Wright, to be sure, was an inability to outrun or navigate the abuse he suffered at the hands of his father, but law enforcement is a profession that routinely exposes its officers to violence, human suffering, and tragedy, often without meaningful opportunity for emotional processing. Mr. Wright internalized those experiences for years, believing—as many officers are conditioned to believe—that endurance and silence were part of the job. That unaddressed trauma manifested as post-traumatic stress disorder, a condition that went untreated until the events of this case forced him to confront it directly and seek help.

At sentencing, Dr. Donna Maddox will provide the Court with a report wherein she diagnosed Mr. Wright with a significant case of post-traumatic stress disorder (PTSD). This diagnosis is not theoretical or retrospective advocacy—it is grounded in clinical evaluation and consistent with what those closest to Mr. Wright have observed for years. Friends and colleagues have described a man who carried emotional trauma daily, long before any investigation began.

4

The Court will also hear from individuals who recognized that Mr. Wright was struggling internally, even while outwardly fulfilling the immense responsibilities of leading one of the largest sheriff's offices in the state.

Importantly, Mr. Wright did not invoke his addiction or PTSD as an excuse when confronted with his misconduct. To the contrary, he accepted responsibility immediately, resigned his office, relinquished his law-enforcement certifications, repaid the monies charged in the Information taken from the Benevolence Fund, and pleaded guilty without qualification. He did not attempt to preserve his career, minimize his actions, or shift blame. Instead, he did what courts routinely encourage but rarely see so fully realized: he confronted the root causes of his behavior and committed himself to genuine rehabilitation.

Since the onset of this case, Mr. Wright has engaged in meaningful treatment for substance-use disorder and mental-health trauma. He acknowledged that his addiction was both enabled by, and hidden within, a culture that often discourages vulnerability among law-enforcement leaders. His rehabilitation required not only sobriety, but also the dismantling of the identity he held for his entire adult life. Few consequences are more severe for a public servant than the permanent loss of the profession to which he devoted himself, and Mr. Wright has accepted that consequence fully, truly, and irrevocably.

Courts have long recognized that extraordinary post-offense rehabilitation can justify a sentence below what might otherwise be imposed, particularly where the defendant has demonstrated insight, accountability, and a low risk of recidivism. Mr. Wright's case exemplifies those principles. His addiction arose from what was initially a service-related physical injury and psychological trauma; his misconduct ended when that addiction was addressed; and his rehabilitation has been comprehensive, voluntary, and sustained.

5

This Court is not being asked to excuse Mr. Wright's conduct. He has never asked for that. Rather, the Court is asked to recognize that the same dedication that led Mr. Wright to serve Spartanburg County for decades—often at a steep personal cost—is the dedication now driving his rehabilitation. A sentence that acknowledges his extraordinary post-offense transformation, and that emphasizes treatment, accountability, and supervision rather than prolonged incarceration, would be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.

Courts routinely recognize that post-offense rehabilitation—particularly in substance-abuse cases—is a powerful indicator of reduced recidivism and genuine remorse. Here, rehabilitation is not speculative or aspirational; it is documented, sustained, and ongoing. Mr. Wright has confronted his addiction with honesty and humility, acknowledging both the wrongfulness of his conduct and the necessity of leaving law enforcement entirely.

This level of rehabilitation weighs heavily in favor of leniency under § 3553(a)(1) and § 3553(a)(2)(C), because it demonstrates that the risk of future misconduct has already been meaningfully addressed.

**IV. The Advisory Guideline Range Is Greater Than Necessary - 18 U.S.C. § 3553(a)(2)**

While the Sentencing Guidelines serve an important advisory role, they cannot fully account for addiction-driven, aberrational conduct by a first-time federal offender with an otherwise exemplary record of public service. Applied mechanically, the Guideline range here risks overstating both culpability and the need for prolonged incarceration. The guidelines serve a meaningful purpose, but they are no substitute for the experience and wisdom of a court who has seen every kind of case and defendant imaginable. Experienced judges have an innate sense of who is likely to be a recidivist and who has committed the only crime he or she will ever commit.

Mr. Wright has never privately or publicly made any effort to excuse his conduct. To the contrary, he accepted responsibility the minute he was confronted by friends and former law enforcement colleagues, which was well before any formal charges were filed. He realizes he let the court, his community, his brothers and sisters in blue, and his profession down. For that, he is inconsolably contrite. It is important for the Court to know that these crimes are the natural and direct consequence of a hidden addiction, an effort to keep that addiction hidden, and a reluctance to address both the physical and psychological pain he has experienced from childhood until the day he cleaned his office out.

A lengthy term of imprisonment would do little to deter future misconduct, as Mr. Wright is no longer—and will never again be—a Sheriff or law-enforcement officer. Nor would it provide additional protection to the public as there is no possibility that Mr. Wright will be a danger to his community. What a lengthy sentence would cause is greater disruption of ongoing treatment that has already proven effective and punish addiction rather than address it. By contrast, a sentence emphasizing treatment, supervision, and accountability would protect the public, reduce the likelihood of recidivism, promote respect for the law by reinforcing responsibility and rehabilitation while reflecting the medical and legal realities of substance-use disorder.

Such a sentence better aligns with the statutory purposes of sentencing than one focused primarily on incarceration.

**V. Avoiding Unwarranted Sentencing Disparities - 18 U.S.C. § 3553(a)(6)**

**a.  South Carolina Prosecutions of Sheriffs.**

The Court is tasked with imposing a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Central to that inquiry is the requirement that the Court avoid unwarranted disparities between similarly situated

7

defendants. Here, meaningful comparison requires looking not to broad national sentencing statistics involving homogeneous offenders, but to similarly situated public officials within South Carolina—a narrow and highly comparable class. As demonstrated below, sentencing outcomes for such defendants consistently fall well below the advisory guideline range applicable in this case, often resulting in probation or minimal custodial sentences.

A review of sentencing outcomes for elected sheriffs in South Carolina convicted of misconduct or related offenses for the past 14 years reveals substantial disparity between the proposed guideline range and sentences actually imposed. The outcomes can be categorized in two ways, those sheriffs who pleaded guilty and accepted responsibility for their crimes as opposed to those who denied their conduct or otherwise put the government to the challenge of proving the case and were convicted by a jury. Although the sentences imposed range dramatically, from one day of custody to 46 months in prison, it is clear that the sheriffs who accepted responsibility and pleaded guilty received sentences ranging between probation to a sentence of one year and one day. This pattern reflects an identifiable trend within South Carolina Courts toward limited or even non-incarcerative punishment for similar offenses.

1. Jason Booth – Saluda County Sheriff
   - Conviction: Pleaded guilty in state court (2012) to misconduct in office for using inmate labor for private projects.
   - Sentence: State probation and fines

2. Charles Goodwin – Abbeville County Sheriff
   - Conviction: Pleaded guilty in state court (2013) to misusing inmate labor and accepting kickbacks.
   - Sentence: State probation and restitution.

3. James R. Metts – Lexington County Sheriff
   - Conviction: Pleaded guilty in federal court (2014) to conspiracy to harbor and conceal illegal aliens under federal law for his role in helping certain non-citizens

avoid proper processing and deportation while detained at the Lexington County Detention Center.
- Sentence: 12 months and 1 day in federal custody.

4. Kenney Boone – Florence County Sheriff
   - Conviction: Pleaded guilty in state court (2020) to embezzlement and misconduct in office.
   - Sentence: 1 day in state custody (time served) plus 5 years' probation.

5. Sam Parker – Chesterfield County Sheriff
   - Conviction: Convicted by a jury in state court (2014) of multiple criminal charges, including misconduct in office, furnishing contraband to inmates, and embezzlement
   - Sentence: 2 years in state custody.

6. Will Lewis – Greenville County Sheriff
   - Conviction: Convicted by a jury in state court (2019) of misconduct in office for misuse of county resources in relation to an inappropriate relationship.
   - Sentence: 1 year in state custody.

7. Alex (George Alexander) Underwood – Chester County Sheriff
   - Conviction: Convicted by a jury in federal court (2021) of multiple criminal charges, including conspiracy, wire fraud, federal program theft, and deprivation of rights.
   - Sentence: 46 months in federal custody.

While the PSR's reliance on national sentencing averages (33 months) is certainly a factor to be considered by this Court, one might conclude that a more accurate barometer would be the sentences given in cases involving elected sheriffs. Section 3553(a)(6) requires the Court to avoid unwarranted disparity among similarly situated defendants. Applying this principle, a sentence within the current guideline range would place Mr. Wright at or above the highest end of all known South Carolina cases, including those sheriffs who elected to go to trial. Accordingly, a guideline sentence would create, rather than avoid, a disparity.

9

The cases cited above reflect defendants who were in law enforcement but there are other forms of public or private trust, and the abuse of trust is not mitigated by the absence of a uniform and a badge.  Recently, a clerk of court pleaded guilty in state court to very serious charges related to her misconduct in a double homicide trial.  Her conduct directly led to the case being reversed on appeal and necessitated a re-trial.  Her punishment after a guilty plea was probation.

In addition, in Spartanburg County, a church administrator engaged in credit card fraud with church funds in a case investigated by the FBI and the U.S. Attorney's Office initially offered that defendant pre-trial diversion (PTI), even though the fraud involved higher dollar amounts than the case at bar and the fraud extended over a significant period of time.  When the victim objected to PTI, the prosecutors recommended probation for that defendant. Same county, roughly the same time period, same District of South Carolina U.S. Attorney's Office, same FBI, albeit a different form of trust and fiduciary duty was breached but the recommendation of probation by the Government of probation is nonetheless noteworthy and illustrative.

The record demonstrates that within South Carolina similarly situated defendants over the past 14 years, routinely receive sentences far below the advisory guideline range in this case. A lengthy term of imprisonment would, therefore, be inconsistent with established sentencing practices in this jurisdiction. For these reasons, and pursuant to 18 U.S.C. § 3553(a)(6), the Defendant respectfully requests this Court impose a downward variance resulting in a sentence that reflects the sentencing norms applicable to other sheriffs in South Carolina.

**b.  Disparity caused by a failure to consider addiction.**

Defendants whose offenses stem primarily from addiction—and who demonstrate early acceptance of responsibility and meaningful rehabilitation—frequently receive downward

variances in this District. A sentence driven solely by Mr. Wright's former status, rather than by his actual conduct and culpability, would create—not avoid—unwarranted disparity.

The goal of § 3553(a)(6) is parity based on conduct, risk, and rehabilitation, not symbolic punishment. Treating this defendant more harshly because of who he once was, rather than what he did and how he responded, would undermine that principle. Lady justice is blindfolded. His status as a former law enforcement officer should in no way lead to disparate favorable treatment. Similarly, because someone chose to dedicate his or her career to law enforcement should not be later used against someone as justification for a severe punishment.

## VI. Conclusion

This Court is not being asked to excuse any of the misconduct of Mr. Wright. To the contrary, he offers nothing but remorse and contrition coupled with embarrassment for what he has done and for placing himself before this Court. Rather, this Court is asked to sentence a person who fell into the throes of addiction after a lifetime of service and who has taken every possible step to confront that illness with honesty, responsibility, and humility. Mr. Wright has already lost his career, his reputation, and the trust he valued most. He now seeks only the opportunity to continue his recovery and make amends. A sentence grounded in treatment, supervision, and proportionality is sufficient—but not greater than necessary—to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Mr. Wright respectfully requests that the Court grant a downward variance from the advisory Guideline range and impose a sentence that will allow him to continue sobriety in a structured environment with stringent conditions, including mandatory substance-abuse treatment, random drug testing, mental-health counseling, and community service. This structure ensures

11

accountability while recognizing that recovery—not incarceration—is the most effective safeguard against future harm.

Respectfully submitted,


s/ Gregory P. Harris
Gregory P. Harris (#1739)
Harris & Gasser, LLC
1529 Laurel Street
Columbia, South Carolina 29201
(803) 779-7080
greg@harrisgasserlaw.com


s/ Harold W. Gowdy, III
Harold W. Gowdy, III (#5675)
2212 Edgefield Road
Spartanburg, South Carolina 29302
(864) 809-0917
trey@treygowdylawfirm.com


Columbia, South Carolina
June 23, 2026